UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**LORI WILLS**,

    *Plaintiff*,

    v.

**CULINART GROUP**, *et al.*,

    *Defendants.*

No. 23-cv-23139

**OPINION**

---

**APPEARANCES**:

**Laura C. Mattiacci**
**Kevin Console**
CONSOLE MATTIACCI LAW, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

    *On behalf of Plaintiff.*

**Rachel Fendell Satinsky**
**Tanner McCarron**
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on a Motion for Summary Judgment, (ECF No. 42), by Defendants CulinArt Group, Inc. ("CulinArt") and Compass Group USA, Inc. ("Compass") (collectively "Defendants") on Plaintiff Lori Wills' ("Plaintiff" or "Wills") claims for sex discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**[1]

## I.    FACTUAL BACKGROUND[2]

CulinArt is a subsidiary of Compass, a food and support service company, whose clients include schools, healthcare facilities, and businesses. (Defs.' SOMF, ECF No. 45 at ¶¶ 1–2). Plaintiff Wills began working for CulinArt's predecessor in June 2000 and became a District Manager in 2011. (Pl.'s SOMF, ECF No. 46-1 at ¶ 1). She remained in that role throughout the relevant period, overseeing between fourteen and twenty-one accounts and supervising managers

---

[1]  The Court entered an Order on December 31, 2025, (ECF No. 48), and this Opinion sets forth the reasoning for the Court's decision.

[2]  The facts set forth herein are undisputed unless otherwise noted. The Court notes that many of Plaintiff's responses to Defendant's Statement of Material Facts ("SOMF") are improper under Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. For example, Plaintiff repeatedly asserts that declarations from Defendants' witnesses are "inconsistent" with their depositions and should be disregarded, without explaining how the testimony is inconsistent or providing contrary citations to the record. Courts routinely disregard SOMF responses that fail to cite contrary evidence or improperly dispute facts without evidentiary support and deem those facts admitted. *See, e.g.*, *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) (deeming facts admitted where plaintiff failed to meaningfully dispute them). To the extent Plaintiff has failed to cite specific evidence in the record to dispute a SOMF set forth by Defendants, the Court deems it admitted for purposes of this Motion.

and chef managers. (*Id.* at ¶ 2).

In June 2020, Wills began reporting to Vice President of Operations John Drexel ("Drexel"), who reported to Division President Dan McGill ("McGill"). McGill reported to CulinArt President Michael Purcell ("Purcell"). (*Id.* at ¶ 3). Prior to Drexel becoming her supervisor, Wills had no performance issues in her two decades at the company. (*Id.* at ¶ 4). Indeed, Drexel testified at his deposition that he was unaware of any prior corrective action against Wills and that her previous supervisors never raised concerns about her performance to him.[3] (Drexel Dep., ECF No. 45-8 at 118:7–22).

Wills contends that the issues she experienced began after Drexel became her supervisor. She testified that Drexel ignored her requests for support, excluded her from meetings and communications, and undermined her by asking a male employee to confirm what she said. (Pl.'s SOMF, ECF No. 46-1 at ¶ 4). She further contends that Drexel gave more support to male employees and that male employees at the company received favorable treatment. (Wills Dep., ECF No. 45-4 at 73:21–74:21). In 2022, CulinArt employed ten District Managers, only two of whom were female, including Wills. (Pl.'s SOMF, ECF No. 46 at ¶ 6).

Beginning in June 2022, Wills used the phrase "boys' club" in conversations with Drexel and thereafter with Human Resources Director Tina Halvatzis ("Halvatzis"). (Defs.' SOMF, ECF No. 45 at ¶¶ 134–46). While Wills could not recall the precise context of these conversations, Drexel understood Wills to be complaining about being excluded from a "clique of managers," who were not providing her with appropriate resources, in one of these conversations. (Drexel

---

[3] Where the parties have cited or excerpted a deposition at length in their SOMF or responses, the Court will cite to the deposition for clarity and precision.

Dep., ECF No. 45-8 at 78:8–16). Wills again referenced the "boys' club" in an August 2022 conversation with Drexel when discussing Defendants rehiring Fred Long ("Long"), an employee that Wills believed was "disrespectful" and "condescending" toward her. (Defs.' SOMF, ECF No. 45 at ¶ 139; Wills Dep., ECF No. 45-4 at 85:20–86:3).

Wills also used the term "boys' club" in two conversations with Halvatzis at some point before August 2022, and again in early December 2022. (Defs.' SOMF, ECF No. 45 at ¶¶ 140–46). While Wills did not recall the exact context, she testified that during her first conversation with Halvatzis, they discussed "how the males in the company were treated better and [] were held to a different standard." (Wills Dep., ECF No. 45-4 at 349:6–350:2).

On August 2, 2022, about two months after she first referenced the "boys' club" with Drexel, Wills was placed on a Performance Improvement Plan ("PIP"). (Defs.' SOMF, ECF No. 45 at ¶ 44). According to Defendants, she was placed on the PIP because of cost and inventory issues with her accounts as well as communication problems, including a failure to promptly respond to an email from Compass' Chief Operating Officer. (*Id.* at ¶¶ 46, 48). The PIP was initially set for a duration of three weeks, which was shorter than the typical duration of 30–90 days. (Pl.'s SOMF, ECF No. 46 at ¶ 21). Drexel subsequently extended the PIP. (Pl.'s SOMF, ECF No. 46 at ¶ 22; Defs.' SOMF, ECF No. 45 at ¶ 49).

In September 2022, Drexel raised new concerns with Wills about excess inventory associated with her Lockheed account, which negatively impacted profitability. (Defs.' SOMF, ECF No. 45 at ¶¶ 60–61, 69). Thereafter, in November 2022, Wills received a "Below Target" performance rating and was denied a bonus and salary increase. (Pl.'s SOMF, ECF No. 46 at ¶¶ 28–29). She had never before received a "Below Target" rating. (*Id.*) At the end of the month,

however, Drexel offered Wills a $5,000 bonus if she completed the action items in the PIP. (Defs.' SOMF, ECF No. 45 at ¶ 87). Thereafter, in December 2022, Drexel and Wills discussed billing issues with her Arris account. (*Id.* at ¶ 80).

On March 2, 2023, Wills' client, the NJM Insurance Group ("NJM"), informed her and Drexel that it was putting their contract out to bid. (*Id.* at ¶ 105). Drexel then learned that NJM had emailed Wills nearly six months prior with a list of issues they were experiencing. (*Id.* at ¶¶ 106–08). Drexel never saw the email until he requested it from Wills on March 8, 2023. (*Id.* at ¶¶ 111–14). Drexel considered Wills' failure to timely communicate this information to him a serious concern because it prevented him from knowing the extent of NJM's dissatisfaction, which endangered CulinArt's business. (*Id.* at ¶¶ 115, 120–21).

A few weeks later, on March 27, 2023, Defendants terminated Wills' employment. (*Id.* at ¶ 129). The decisionmakers included Drexel, McGill, Purcell, Halvatzis, and Vice President of Human Resources Erica Lee ("Lee"). (*Id.* at ¶ 119). Defendants assert that Wills' termination was due to performance issues related to certain client accounts, including the billing issues with the Arris account, the inventory problems with the Lockheed account, and her failure to forward the email detailing concerns raised by NJM. (*Id.* at ¶¶ 78, 118). Wills testified that she did not forward the email from NJM because she had already discussed those issues verbally with Drexel. (Wills Dep., ECF No. 45-4 at 258:16–22). NJM representative Tracy Trinian never requested Wills' removal, did not have concerns about her performance, and was surprised to learn she had been terminated. (Pl.'s SOMF, ECF No. 46-1 at ¶ 62).

Prior to Wills' termination, Halvatzis consulted Defendants' HR Service Center, which recommended against termination. (Defs.' SOMF, ECF No. 45 at ¶¶ 125–26). A representative of

the HR Service Center, Kasheena Townsend ("Townsend"), could not identify any other instance in which CulinArt proceeded with a termination against the Service Center's recommendation not to do so. (Pl.'s SOMF, ECF No. 46-1 at ¶ 46). Separately, Lee and McGill expressed concerns about the potential legal risk with terminating Wills at least in part because Wills "was using this word boys' network." (Pl.'s SOMF, ECF No. 46-1 at ¶¶ 44–45; McGill Dep., ECF No. 45-7 at 77:19–21). Wills was replaced by a male, Jacob Nyman ("Nyman"), who was hired by, and initially reported to, Drexel. (Defs.' SOMF, ECF No. 45 at ¶ 130; McGill Dep., ECF No. 45-7 at 26:16–21, 28:1–11).[4]

During her deposition, Wills testified that male employees generally received more favorable treatment.[5] Specifically, she pointed to a District Manager, Steve Borenkoff, who had a different supervisor but was also placed on a PIP around the same time. (Defs.' SOMF, ECF No. 45 at ¶¶ 151–53). But after being put on a PIP and terminated from CulinArt, Borenkoff was given 90 days to find another position within "the Compass umbrella." (Wills Dep., ECF No. 45-4 at 134:8–21). Likewise, her replacement, Nyman, was given 120 days to find another position upon his termination. (*Id.* at 74:10–21).

Finally, there is no evidence in the record that anyone at the company ever touched Wills

---

[4] Nyman was terminated on March 23, 2024, for poor performance. (Defs.' SOMF, ECF No. 45 at ¶ 131). He was replaced by a female. (*Id.* at ¶ 133).

[5] Wills also points to Joe Ginder ("Ginder"), Harry Williamson ("Williamson"), Long, and Tony Velez ("Velez") as comparators and alleges that they were held to a different standard. (Defs.' SOMF, ECF No. 45 at ¶ 150). However, other than alleging that Ginder and Williamson were treated more favorably because they received support when they requested it or had issues with accounts, (*id.* at ¶¶ 164–66), she does not offer any specifics.

inappropriately or made offensive sex-based comments. (*Id.* at ¶¶ 171–72). However, approximately a year after Plaintiff's termination, another female employee, Michele Byler, complained about sex discrimination, retaliation, and harassment that was so severe she had to take medical leave. (Pl.'s SOMF, ECF No. 46-1 at ¶ 10).

## II.    PROCEDURAL HISTORY

Plaintiff filed her complaint on December 15, 2023, asserting claims for sex discrimination, retaliation, and hostile work environment under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, the NJLAD, N.J. STAT. ANN. §§ 10:5-1, *et seq.*, and, in the alternative, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.*[6] (Compl., ECF No. 1). Defendants moved for summary judgment on May 16, 2025. (ECF No. 42). Plaintiff filed her opposition on June 23, 2025, (ECF No. 45), and Defendants replied on June 30, 2025. (ECF No. 46).

## III.    LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if it will affect the outcome of a lawsuit under the applicable law" and a "genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party." *Young v. United States*, 152 F. Supp. 3d 337, 345–46 (D.N.J. 2015) (citations omitted). When the Court considers the evidence presented by the parties, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

---

[6] Plaintiff appears to have abandoned her Pennsylvania-state-law claims.

7

"The moving party bears the burden of establishing that no genuine issue of material fact remains." *Id.* at 346 (citation omitted). The non-moving party's evidence does not need to be in admissible form to be considered on summary judgment, rather "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." *Fraternal Ord. of Police v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citation omitted).

## IV.   **DISCUSSION**

As explained below, there are genuine disputes of material fact which preclude summary judgment as to Plaintiff's sex discrimination and retaliation claims. However, Plaintiff has failed to adduce sufficient evidence to make a prima facie case of a hostile work environment. Accordingly, Defendants' Motion is denied in part and granted in part.

### A.   **Sex Discrimination**

Discrimination claims under the NJLAD and Title VII are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 153 n.19 (3d Cir. 2018). To establish a prima facie case of sex discrimination under Title VII and the NJLAD, a plaintiff must show that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). The burden to establish a prima facie case is "not onerous." *Texas*

8

*Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Its requirements are flexible, and courts "must be sensitive to the myriad of ways" an inference of unlawful discrimination can arise. *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 347–48 (3d Cir. 1990). "Simply stated, a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Id.*

Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to put forward a "legitimate, nondiscriminatory" reason for the adverse employment action. *Burdine*, 450 U.S. at 254. If the defendant does so, the plaintiff must then persuade the factfinder that this was not the employer's real reason. *Id.* at 256.

> ### i. *Plaintiff has established a prima facie case.*

Defendants dispute only the fourth prima facie element—whether the termination occurred under circumstances giving rise to an inference of discrimination.[7] (Defs.' Mot., ECF No. 42-2 at 18). Plaintiff relies on various evidence to show that her termination occurred under circumstances giving rise to an inference of discrimination including: that she was replaced by a male; that comparable male employees were treated more favorably; the lack of any disciplinary action in her two decades of employment prior to Drexel becoming her supervisor and his treatment of her; the unusually short time period for her PIP; that she was terminated against the recommendation of Defendants' HR Service Center; the disproportionately low number of females in her position

---

[7] It appears that the only adverse action upon which Plaintiff bases her discrimination claims is her termination. (*See* Pl.'s Opp, ECF No. 45 at 16–22). "It is axiomatic that termination constitutes an adverse employment action." *Kamdem-Ouaffo v. Task Mgmt. Inc.*, No. 17-7506, 2018 WL 3360762, at *16 (D.N.J. July 9, 2018), *aff'd in part*, 792 F. App'x 218 (3d Cir. 2019).

at the company; and a complaint of harassment by another female at the company.

First, the fact that Plaintiff was replaced by a male employee alone establishes an inference of discrimination at the prima facie stage. *See, e.g.*, *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007). That Plaintiff's male replacement was terminated nearly a year later and replaced by a female does not per se negate the inference of discrimination. (*Contra* Defs.' Mot., ECF No. 42-2 at 22–23). Subsequent personnel decisions cannot retroactively sanitize an earlier discriminatory termination. "[T]his simply demonstrates that the employer is willing to hire people from this class … and does not establish that the employer did not fire the plaintiff on the basis of her protected status." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 353 (3d Cir. 1999). Further, as Plaintiff points out, by the time Nyman's replacement was hired Defendants were aware that they were being sued by Wills for sex discrimination.

Second, Plaintiff is able to identify comparator evidence. It is the plaintiff's burden to identify comparators outside the protected class who were treated more favorably and to put forth evidence that they are similarly situated. *Garrow v. Wells Fargo Bank, N.A.*, No. 15-1468, 2016 WL 5870858, at *4 (E.D. Pa. Oct. 7, 2016) (citing *Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012)). Comparators must be "similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009). In deciding whether one is a proper comparator, "[w]hich factors are relevant is determined by the context of each case, but often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quotation marks and citation omitted). However, "evidence offered in a discrimination case concerning purported comparators

10

with different supervisors is neither per se admissible nor per se inadmissible." *Id.* (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008)). Whether employees are similarly situated is generally a question of fact for the jury, but summary judgment may be appropriate where there is no evidence from which a jury could conclude that the comparators were similarly situated. *E.g.*, *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

Here, Plaintiff alleges that Borenkoff, Nyman, Ginder, Williamson, Long, and Velez were treated more favorably. Defendants respond that the identified male employees are not proper comparators.[8] (Defs.' Mot., ECF No. 42-2 at 19–23). However, at least two male employees, Borenkoff and Plaintiff's replacement Nyman, could be considered comparators by a jury. Both held the same position as Plaintiff—District Manager. While Borenkoff had a different supervisor, Nyman initially reported to Drexel. Both also had performance issues. Borenkoff was placed on a PIP around the same time as Plaintiff and Nyman was ultimately fired for poor performance. Defendant provides no evidence to suggest the degree of poor performance renders them dissimilar from Wills. And both male employees were given the opportunity to find different positions within Compass while she was not: Borenkoff was given 90 days, (Wills Dep., ECF No. 45-4 at 134:9–

---

[8] Defendants also argue, in conclusory fashion, that Wills's testimony regarding the more favorable treatment of male employees constitutes inadmissible hearsay. (Defs.' Mot., ECF No. 42-2 at 19–23). The Court disagrees. Wills learned of the alleged favorable treatment through discussions with Defendants' employees, including Joe Ball ("Ball"). (See Defs.' SOMF, ECF No. 45 at ¶ 155). Defendants do not contend that Ball or any other employee was speaking outside the scope of his employment when making these statements. Accordingly, such statements likely qualify as admissions of a party opponent and are not hearsay. *See* FED. R. EVID. 801(d)(2)(D). In any event, it is Defendants' burden at summary judgment to demonstrate that the challenged evidence is inadmissible. Defendants offer only conclusory assertions, unsupported by meaningful legal analysis, and therefore fail to establish that Wills's testimony should be excluded as hearsay at this procedural stage.

21), and Nyman was given 120 days, (*id.* at 74:10–21). This is sufficient evidence to create a genuine dispute of material fact as to whether these male employees are proper comparators and whether Wills was treated differently because of her sex. *See Andujar v. Gen. Nutrition Corp.*, 767 F. App'x 238, 241 (3d Cir. 2019) (affirming the district court's decision to allow the jury to decide whether employees who were all managers or assistant managers in the same region as the plaintiff who also received failing performance evaluation scores were valid comparators); *Brown v. DaVita Dialysis*, No. 09-3892, 2012 WL 1122307, at *5 (E.D. Pa. Apr. 4, 2012) (denying motion in limine on the comparator issue due to genuine disputes of material fact, including differences in disciplinary histories). *See also Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 95 (3d Cir. 2006) (holding that the district court did not err in denying the motion for summary judgment and concluding that whether teachers with different certifications are similarly situated is "a fact issue appropriate for the jury.")

In contrast, the other employees Plaintiff identified—Ginder, Williamson, Long, and Velez—are not proper comparators because there are not sufficient facts in the record from which a reasonable jury could find them to be similarly situated to Plaintiff. First, none of them were supervised by Drexel. Further, Long held a different position—Assistant Regional Chef—with a different supervisor and job responsibilities. (Defs.' SOMF, ECF No. 45 at ¶¶ 158–60); *Mandel*, 706 F.3d at 170 ("[A]n employee who holds a different job in a different department is not similarly situated." (citation omitted)). Additionally, while Ginder and Williamson were both District Managers, they handled different kinds of accounts than Plaintiff. Wills' accounts were primarily business and industry, Ginder's accounts were mostly education, and Williamson's were primarily healthcare. (Defs.' SOMF, ECF No. 45 at ¶¶ 13, 19–20). Most importantly, there is nothing in the

294122044268583e

record from which a jury could find or even reasonably infer that these male employees had similar performance issues as Plaintiff yet were treated differently in any material way. Wills had no knowledge as to Williamson's performance ratings or if he was placed on a PIP. (*Id.* at ¶ 168). There is nothing in the record concerning Ginder's performance or discipline. Wills does not know anything about Velez's performance other than that he was removed from an account as a Chef Manager. (*Id.* at ¶ 163). Thus, Plaintiff has failed to raise a genuine dispute of material fact as to whether these male employees are proper comparators.

Finally, even without comparator evidence a plaintiff can still establish a prima facie case by "point[ing] to other circumstantial evidence that supports an inference of discrimination." *Etheridge v. Novo Nordisk Inc.*, No. 19-13676, 2022 WL 1689910, at *8 (D.N.J. May 26, 2022) (citation omitted). Plaintiff does so here. Indeed, "Plaintiff has provided the Court with an array of circumstances to support the inference of discrimination." *Jessen v. Model N, Inc.*, No. 23-919, 2025 WL 1040632, at *7 (D.N.J. Apr. 8, 2025).

In 2022, the year before her termination, only two out of ten District Managers were female. Plaintiff had no history of performance or disciplinary issues before Drexel became her manager. She alleges that Drexel treated her differently than male employees, including excluding her from meetings and asking male employees to confirm statements she made. Defendants departed from their usual human resources practices in several respects with regard to Plaintiff, including issuing her a shorter term for the initial PIP, terminating her against the recommendation of the HR Service Center, and not affording her an opportunity to obtain another position within the company. Finally, another female employee, Michele Byler, complained about sex discrimination,

retaliation, and harassment at the company within a year of her termination.[9] Thus, a reasonable jury could find circumstances supporting an inference of intentional discrimination "when all of the aforementioned events, taken in the light most favorable to the nonmovant, are considered as a whole." *Id.*

> ii.   *A reasonable jury could find Defendants' proffered reason for the termination to be pretext.*

Because Plaintiff has established a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason, which they have: poor performance. The burden then shifts back to Plaintiff to show sufficient evidence from which a reasonable jury could reject that reason and find it to be pretext for discrimination. The Court finds that Plaintiff has produced sufficient evidence from which a reasonable jury could do just that.

To defeat summary judgment, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff "can satisfy the second prong by demonstrating, among other things, that the employer treated other, similarly situated persons not of his protected class more favorably." *Qin v. Vertex, Inc.*, 100 F.4th 458, 475 (3d Cir. 2024) (quotation marks and citation omitted).

---

[9] Defendants argue that the Byler email is also hearsay, (Defs.' Reply, ECF No. 46 at 6), but the Court disagrees for the reasons stated above as Defendants do not argue that Byler was not an employee speaking within the scope of her employment. At this procedural stage, Defendants do not make any further argument as to the admissibility of the complaint by Byler and thus the Court makes no further analysis.

If Plaintiff presents evidence sufficient for a jury to discredit Defendants' proffered reasons, she "need not also come forward with additional evidence of discrimination beyond [her] prima facie case." *Fuentes*, 32 F.3d at 764. "Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 256 n.10. And "[i]n an employment discrimination case a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (quotation marks and citation omitted).

As an initial matter, Plaintiff relies upon a declaration from a representative of NJM, her former client, that states NJM never requested Wills' removal, did not have concerns about her performance, and was surprised to learn she had been terminated. (Pl.'s Opp, ECF No. 45 at 21). Defendants argue that Plaintiff cannot rely on the perceptions of non-decisionmakers to show pretext. (Defs.' Mot., ECF No. 42-2 at 32–34). The Court agrees. An assessment of Wills' performance by a third-party outside the company has no bearing as to what the decisionmakers perceived in terms of her performance. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("It is the perception of the decisionmaker which is relevant to the question of retaliation, not the opinions of [Plaintiff's] co-workers *or other third parties*." (emphasis added)). An employee's performance may be satisfactory to a client yet still fall short of her employer's expectations.

However, the Court finds that Plaintiff has proffered other relevant and admissible evidence from which a reasonable jury could find pretext: the lack of performance issues before

Drexel became her supervisor; her shorter-than-usual term for her initial PIP, which, although extended, never had a clear end date;[10] Defendants' termination of Plaintiff against HR Service Center's recommendation; and Defendants' failure to afford Plaintiff the opportunity to find another position within Compass when this opportunity was afforded to male employees with similar performance issues, including her replacement.[11]

Further, there were additional irregularities with respect to Plaintiff's PIP. Specifically, Drexel did not complete any of the three progress report boxes in the PIP document. (Drexel Dep., ECF No. 45-8 at 200:11–201:6). Instead, he created a separate timeline documenting Wills' negative performance issues without any mention of anything positive. (Pl.'s SOMF, ECF No. 46-1 at ¶ 27). Further, there was no consistent follow-up from Drexel regarding the PIP. (Wills Dep., ECF No. 45-4 at 202:15–19). Taken together, a reasonable jury could find circumstantial evidence

---

[10]  Indeed, according to Defendants, Plaintiff remained on the PIP at the time of her termination.

[11] Plaintiff also argues that Defendants advanced inconsistent and shifting explanations for her termination, relying on a document she received at the time of her discharge that allegedly stated reasons different from those later asserted by Defendants. (Pl.'s Opp., ECF No. 45 at 18 (citing Plaintiff's SOAF ¶ 36, which in turn references a document Bates-numbered WILLS039–40)). However, as Defendants note, no document bearing that Bates designation was included in Plaintiff's submissions. (Defs.' Reply, ECF No. 46 at 8–9). Nevertheless, Defendants do not dispute that the document exists, was provided to Plaintiff at the time of her termination, or contains the quoted language. (*See* Pl.'s SOMF, ECF No. 46-1 at 50–51). Indeed, Defendants themselves describe the contents of the document but likewise failed to provide it to the Court. (*Id.*). Accordingly, the Court is unable to draw any conclusions about the document beyond the fact that it includes the quoted language. Based on that language, the stated reasons—such as "violating safety and sanitation rules or practices" or "willful misconduct"—appear at least somewhat inconsistent with the justifications Defendants otherwise advance for Plaintiff's termination. The Court does not, however, rely on this asserted inconsistency in finding pretext, as other evidence independently supports the Court's resolution of the present Motion.

of pretext. *See Qin*, 100 F.4th at 475 (holding that a jury could find the employer's justification to be pretext because, *inter alia*, plaintiff had satisfactory performance for eighteen years and put forward comparator evidence); *Keene v. Sears, Roebuck & Co.*, No. 05-828, 2007 WL 2572366, at *3 (D.N.J. Sept. 4, 2007) ("[C]ourts have held that an employer's failure to follow policies and procedures and inconsistencies in procedures applied by defendants can serve as circumstantial evidence of pretext." (quotation marks and citation omitted)). Because a reasonable jury could find that Defendants' asserted reason of poor performance was pretextual and that sex discrimination was the real reason for Plaintiff's termination, summary judgment is inappropriate.

### A. Retaliation

The Court next turns to the retaliation claim and finds that there is a genuine dispute as to whether Plaintiff engaged in protected activity and whether that activity had a causal relationship to her termination.

The *McDonnell Douglas* framework also applies to retaliation claims under Title VII and the NJLAD. *D'Ambrosio*, 755 F. App'x at 153 n.19. To establish a prima facie case of retaliation, an employee "must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." *Perry v. Harvey*, 332 F. App'x 728, 732 (3d Cir. 2009). The Third Circuit has made clear that a "general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citation omitted). Rather, "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Id.* However, informal complaints may constitute protected

17

activity. *Id.*

Plaintiff argues she engaged in protected activity when she complained about a "boys' club" to both Drexel and Halvatzis on several occasions. (Pl.'s Opp., ECF No. 45 at 27–32). Defendants counter that Plaintiff's references to a "boys' club" are too vague to connect to an unlawful employment practice and thus cannot constitute protected activity as a matter of law. (Defs.' Mot., ECF No. 42-2 at 37–40). There is some force to that argument, as the Third Circuit has held that "oblique reference[s]" to discrimination are insufficient to constitute protected activity. *Perry*, 332 F. App'x at 733. And here, Plaintiff could not recall all the specifics of these conversations or precisely when they occurred. But, the Court's inquiry at summary judgment is not whether Plaintiff articulated her concerns with sufficient precision, but whether the record would permit a jury to conclude that the decisionmakers *understood her* to be complaining about discriminatory treatment and subsequently took an adverse action against her because of it. Indeed, if Plaintiff did not engage in protected activity at all, but Defendants *thought* she did and retaliated against her, they would be liable. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 571 (3d Cir. 2002) ("[W]e have consistently held that an employer's discharge of an employee for discriminatory reasons amounts to illegal retaliation even if it is based on the employer's mistaken belief that the employee engaged in protected activity.")

Here, the record contains sufficient evidence from which a reasonable jury could conclude that Plaintiff engaged in protected activity and, crucially, that the decisionmakers perceived her to be doing so. Although Plaintiff did not remember the exact context, she referenced the "boys' club" in a conversation with Halvatzis, a human resources representative, at some point before she was placed on a PIP, during which they discussed "how the males in the company were treated

18

better and [] were held to a different standard."[12] (Wills Dep., ECF No. 45-4 at 349:6–350:2). Further, Drexel understood Plaintiff to be complaining about being excluded from a "clique of managers" who were not providing her with appropriate resources when she referenced the "boys' club."[13] (Drexel Dep., ECF No. 45-8 at 78:8–16). And finally, McGill was concerned about terminating Plaintiff because she "was using this word boys' network." (McGill Dep., ECF No. 45-7 at 77:19–21). The reasonable inference from all this evidence is that the relevant decisionmakers were aware of her "boys' club" references and understood her to be complaining about favorable treatment of male employees. This is more than enough evidence to present a factual dispute as to whether Plaintiff engaged in protected activity.

Turning to the final element: causation, a plaintiff can generally establish causation either by showing temporal proximity between the protected activity and the adverse action that is suggestive of pretext, but "courts may also look to the intervening period for other evidence of retaliatory animus." *Holt v. Pennsylvania*, 683 F. App'x 151, 157 (3d Cir. 2017) (cleaned up). That other evidence "may include a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other evidence gleaned from the record as a whole that is sufficient to support an inference of retaliatory animus." *Id.* (cleaned up). Here, Plaintiff argues that both temporal

---

[12] Defendants argue that this was only Wills' "subjective sentiment" about the conversation, (Defs.' Reply, ECF No. 46 at 12–13), but, at summary judgment, this creates a genuine dispute of material fact that is for a jury to resolve.

[13] The fact that Drexel testified he believed this clique to include a female employee, (Drexel Dep., ECF No. 45-8 at 76:10–77:9), does not per se negate the connotation of sex discrimination that could be deemed inherent from Plaintiff's use of the term "boys' club." Ultimately, whether Plaintiff's use of the term "boys' club" was sufficient to constitute protected activity is a question of fact for the jury.

proximity and other circumstantial evidence, specifically a pattern of antagonism, supports her retaliation claim.

As to temporal proximity, the Court agrees with Defendants that the time gap between Plaintiff's protected activity and her termination is insufficient, standing alone, to establish causation. (Defs.' Mot., ECF No. 42-2 at 40–44). Plaintiff's last conversation with Halvatzis occurred in early December 2022, and she was not terminated until late March 2023—nearly four months later. Such a gap is not suggestive of retaliatory animus. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). The case which Plaintiff relies on, *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005), involved a temporal gap of less than three months, shorter than the period here and thus is factually distinguishable.

However, termination is not the only adverse action to be considered with respect to Plaintiff's retaliation claims. The standard for adverse action that applies to retaliation claims is less stringent than the one that applies in the discrimination context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In the retaliation context, an action is materially adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57.

Accordingly, Plaintiff's placement on a PIP could constitute an adverse action if a reasonable juror could conclude that it would dissuade a reasonable employee from complaining about discrimination. *See Kelly v. Mills,* 677 F. Supp. 2d 206, 225–26 (D.D.C. 2010), *aff'd*, No. 10-5049, 2010 WL 5110238 (D.C. Cir. Dec. 14, 2010) (considering a PIP an adverse action for purposes of a retaliation claim). As such, temporal proximity is a closer question than Defendants suggest. Plaintiff testified that she began using the term "boys' club" as early as June 2022, and

20

she was placed on a PIP in August 2022—approximately two months later. A gap of this length may be sufficiently suggestive of causation. At a minimum, this temporal proximity, viewed in the light most favorable to Plaintiff, could permit a reasonable jury to infer a causal connection between her protected activity and her placement on a PIP. *See Fasold*, 409 F.3d at 189–90.

In any event, even without evidence of temporal proximity, the Court agrees with Plaintiff that there is sufficient evidence with respect to a pattern of antagonism to establish causation. The proximity between her conversations with Drexel and Halvatzis (between June 2022 and early December 2022) and her subsequent placement on a PIP (August 2022), negative performance review and denial of her bonus and salary increase (November 2022), and eventual termination (March 2023) could support a jury finding of a retaliatory campaign that commenced following her protected activity and culminated in her termination. (Pl.'s Opp., ECF No. 45 at 32–37). This, in conjunction with her lack of any prior discipline or performance issues,[14] is sufficient to create a genuine dispute of material fact as to whether Plaintiff's protected activity was the cause of her termination. *See LaFiandra v. Accenture, LLP*, No. 23-3050, 2024 WL 5116955, at *4 (3d Cir. Dec. 16, 2024) ("This evidence of a 'pattern of antagonism' may by itself suffice to satisfy the causal element of [Plaintiff's] prima facie case of retaliation.")

Since Plaintiff has established a prima facie case, the same evidence that meets her burden to show pretext as to her sex discrimination claim likewise supports her retaliation claim.

---

[14] Defendants argue that Wills' performance issues predated her protected activity, pointing to write-offs on one of her accounts in March and April 2022. (Defs.' Reply, ECF No. 46 at 6). However, the record indicates that Drexel only raised these issues in an email on July 22, 2022, which was after the June 2022 conversation in which she referenced the "boys' club." (Defs.' SOMF, ECF No. 45 at ¶¶ 24, 26).

**B.  Hostile Work Environment**

To succeed on a hostile work environment claim under Title VII, the plaintiff must establish that: (1) he/she suffered intentional discrimination because of his/her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.[15] *Mandel*, 706 F.3d at 167. "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quotation marks and citation omitted).

Defendants argue that Plaintiff can establish neither that there was intentional discrimination nor that it was severe or pervasive because it is undisputed that Plaintiff did not experience physical harassment or sex-based comments. (Defs.' Mot., ECF No. 42-2 at 45–48). Plaintiff argues that Defendants are cherry-picking the record which, taken as a whole, could support a finding of a hostile work environment despite a lack of overt sexual harassment. (Pl.'s Opp., ECF No. 45 at 24–25). The Court agrees with Defendants.

Plaintiff has failed to proffer evidence from which a reasonable jury could conclude that

---

[15]  The elements of a hostile work environment claim under the NJLAD are the same as the first four elements of a Title VII claim. *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). "Therefore, any plaintiff who has fulfilled the Title VII prima facie case will have also shown the elements required by the NJLAD." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 277 n.7 (3d Cir. 2001).

any discrimination was severe or pervasive. The Third Circuit has made clear that this standard is demanding. "Discrimination is severe or pervasive only if it is so extreme that it amounts to a change in the terms and conditions of employment." *Norris v. NLMK Pa. LLC*, No. 22-3186, 2024 WL 1209747, at *4 (3d Cir. Mar. 21, 2024) (cleaned up). The Third Circuit has set a high bar for such claims, and even repeated use of sex-based slurs or sexually inappropriate comments may be insufficient as a matter of law. *See id.*; *Nitkin*, 67 F.4th 565. Plaintiff's claim cannot survive this stringent standard.

The cases upon which Plaintiff relies do not persuade the Court otherwise. (Pl.'s Opp, ECF No. 45 at 24–25). In *Cardenas v. Massey*, the court found that a combination of "facially discriminatory comments," including slurs, and facially neutral conduct could allow a jury to find a hostile work environment. 269 F.3d at 261–63. No such evidence exists in this case. In *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990), the evidence included "not only name calling, pornography, [and] displaying sexual objects on desks, but also the recurrent disappearance of plaintiffs' case files and work product, anonymous phone calls, and destruction of other property"—conduct far more extreme than in this case. And in *Abramson v. William Paterson College of New Jersey*, there were repeated instances of religious discrimination over a two-year period, including defendants "criticizing and raising their voices at [Plaintiff] regarding her lack of availability during the Sabbath," charging her with a sick day on a Jewish holiday when she was not scheduled to teach, and scheduling meetings on Jewish holidays so plaintiff could not attend. 260 F.3d at 279. Plaintiff simply did not experience such prolonged and targeted harassment.

Further, while not dispositive, it is undisputed that Plaintiff was not subject to inappropriate

or offensive remarks or physical touch. Plaintiff relies essentially on the same evidence she offers in support of her sex discrimination claim, (Pl.'s Opp., ECF No. 45 at 25–27), the strongest evidence being the email from Michele Byler in which she complains about harassment that was so severe that she had to take medical leave. But that email concerns a different employee and came more than a year after Plaintiff was terminated and cannot establish, without more, that Plaintiff herself was subject to a hostile work environment.

Even if all of Plaintiff's evidence is credited and all inferences therefrom drawn in her favor, a reasonable jury could not find severe or pervasive conduct based upon sex sufficient to establish a hostile work environment. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's hostile work environment claims.[16]

---

[16] Plaintiff makes a passing reference to a retaliatory hostile work environment claim, (Pl.'s Opp., ECF No. 45 at 37), but the Court agrees with Defendants that this claim also cannot survive. (Defs.' Reply, ECF No. 46 at 11). The elements of a retaliatory hostile work environment claim are essentially the same as that of a discriminatory one, and a plaintiff must show that: "(1) [she] suffered intentional discrimination because of his protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Watkins v. Pa. Dep't of Corr.*, No. 22-1426, 2023 WL 5925896, at *2 (3d Cir. Sept. 12, 2023) (cleaned up). For retaliation to create a hostile work environment, the plaintiff's workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Id.* at *4 (alteration in original) (quoting *Morgan*, 536 U.S. at 116). As with her sex-based claim, nothing in the record indicates that any retaliation Plaintiff experienced rose to that level.

## V.    <u>CONCLUSION</u>

For these reasons, the Court finds there are genuine disputes of material fact as to Plaintiff's claims for sex discrimination and retaliation but not as to her hostile work environment claims. Accordingly, Defendants' Motion for Summary Judgment, (ECF No. 42), is **GRANTED IN PART AND DENIED IN PART.** An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**